[Civil No. 1485.    Filed January 13, 1916.]

[154 Pac. 202.]

## ARIZONA CORPORATION COMMISSION, Appellant, v. HERALDS OF LIBERTY, Appellee.

1. MANDAMUS—ACTS OF STATE CORPORATION COMMISSION—STATUTES— "PROCEEDING"—"PROPER PROCEEDING."—Civil Code of 1913, paragraph 3486, prescribes the form of application by foreign fraternal beneficiary societies to the Corporation Commission, licensed to transact the business of insurance in the state, and provides that, when the commission refuses to license any society, it shall reduce its ruling or order to writing, file it in its office, and furnish a copy

thereof with a statement of its reasons to the officers of the society on request, and that its acts shall be reviewable by proper proceedings in any court of competent jurisdiction within Maricopa county. Civil Code, paragraph 1558, provides: "If the proceedings be brought in the supreme court the court shall. . . . If brought in the superior court the trial shall be had in the county in which the proceeding is brought." Paragraphs 1553 and 1554 provide that a party beneficially interested, having no plain and adequate remedy at law, shall be entitled to *mandamus* from the supreme court or the superior court to any inferior tribunal to compel the performance of an act which the law specially enjoins on it, and for the forming of issues and a jury trial. A foreign fraternal beneficiary society made application for a license to transact business in the state in accordance with the statute, and the license was refused by the Corporation Commission on the ground that the refusal was within its discretion. *Held,* that the term "proceedings" meant the form of law or the mode in which a judicial transaction is to be transacted; that *mandamus* was within the term "proper proceedings," and would lie to review the commission's action.

2. MANDAMUS—FOREIGN BENEFICIARY SOCIETY—RIGHT TO DO BUSINESS IN STATE—STATUTE—"MAY."—Constitution, article 15, section 5, provides that the Corporation Commission shall have the sole power to issue licenses to foreign corporations to do business in this state as may be prescribed by law. Civil Code of 1913, paragraph 3486, declares any society entitled to a license to transact business within the state upon filing with the state Corporation Commission the papers and statements therein enumerated, and furnishing it with such other information as it may deem necessary to a proper exhibition of its business and plan of insurance, and that the commission may issue a license to such society to do business in the state. *Held,* that the Constitution gave the sole power to issue licenses to the commission, leaving the legislature to prescribe the kinds of corporations that might do business in the state, and made it the duty of the commission to issue licenses to such corporations upon proper application; that the word "may" was not used in a permissive or optional sense, but was mandatory, having the sense of "shall," so that the commission, on a proper application, could not arbitrarily refuse to issue a license, and that *mandamus* would lie to compel its issuance.

[As to right of foreign corporation to question validity of statute regulating foreign corporations, see note in **Ann. Cas. 1913C,** 1287.]

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Affirmed.

Mr. Wiley E. Jones, Attorney General, and Mr. Leslie C. Hardy and Mr. Geo. W. Harben, Assistant Attorneys General, for Appellant.

Mr. George J. Stoneman, for Appellee.

ROSS, C. J.—The appellant, the Arizona Corporation Commission, prosecutes this appeal from the judgment of the superior court of Maricopa county in *mandamus* proceedings requiring and compelling it to issue to the appellee, a foreign fraternal beneficiary society incorporated under the laws of the state of Alabama, a license authorizing the appellee to transact and carry on the business of fraternal insurance. The appellee showed in its complaint that it was one of the kinds of fraternal beneficiary societies described in article 6 of title 24 of the Civil Code of 1913, and that it had filed with the appellant Corporation Commission, on the twenty-second day of April, 1915, its application for license to transact the business of insurance in the state of Arizona, which application was made a part of the complaint. In the particulars required by paragraph 3486 of said chapter and title the application for license was sufficient, in that it showed the filing with the Corporation Commission of all the papers, instruments and statements, with proper verifications, therein especially named and enumerated. It is alleged that, notwithstanding the application for license to transact business, which in all respects conformed to the law, the "said Arizona Corporation Commission, without just or legal ground or excuse, and without assigning any legal reason therefor, has refused and neglected, and still does refuse and neglect, to grant to plaintiff a permit and license to transact business in the state of Arizona. . . . "

No return to the alternative writ was made, but the appellant moved to strike it, and filed its demurrer to the complaint. The motion to strike and the demurrer both raised the point that the complaint showed upon its face that the writ of *mandamus* was sought to control the discretion and the judgment of the appellant Corporation Commission in the performance by it of a duty imposed by law that is *quasi*-judicial in its nature. The appellant answered, admitting that it "is required by article 6 of title 24 of the Civil Code of.

1913, . . . to grant to all foreign, fraternal and beneficiary societies coming within the definition and description of such societies as contained in said article and title which have complied with the requirements regulating such foreign, fraternal and beneficiary societies a license, certificate, and permit to transact business in the state of Arizona, and further admits that plaintiff made an application for license and permit to transact its business in the state of Arizona to the Arizona Corporation Commission on the twenty-second day of April, 1915.''

Upon the trial it was admitted by the appellant that the appellee ''had performed the physical acts and had filed with the Corporation Commission of the state of Arizona the several instruments set forth in its verified complaint and application for alternative writ of *mandamus* filed herein.''

Upon the pleadings and the stipulation judgment was entered making the alternative writ absolute. From the judgment and the orders of the court overruling the demurrer and motion to strike, this appeal was taken.

It is seen from the admitted facts that the appellee had conformed to the requirements of law, and was entitled to a license to do business in the state, unless the contention of the appellant that the Corporation Commission's act in refusing the license was a discretionary one or a *quasi*-judicial act is well founded, and not subject to revision in this proceeding. Paragraph 3486, *supra*, provides, among other things, that:

''When the Corporation Commission refuses to license any society, or revokes its authority to do business in this state, the commission shall reduce its ruling, order or decision to writing and file the same in the office of the Corporation Commission and shall furnish a copy thereof, together with a statement of its reasons, to the officers of the society, upon request, and the action of the Corporation Commission may be reviewable by proper proceedings in any court of competent jurisdiction within the county of Maricopa, state of Arizona.''

''The action of the Corporation Commission,'' whether it be determined to be ministerial, discretionary or judicial, is by this statute made reviewable in the courts. From the Constitution and laws of the state we think the superior court

of Maricopa county was the proper and competent tribunal to appeal to for a review of the action of the Corporation Commission. Whether *mandamus* is the "proper proceedings" mentioned in the statute is another question. It is evident that the legislative intent was to refer the complaining party to some well-known statutory or common-law proceeding. It might have provided for a summary hearing and review of the action of the Corporation Commission in the superior court, as it did in paragraph 3381 of the Civil Code, in reference to the revocation or suspension of licenses to do business by other kinds of insurance corporations than fraternal. It did not see fit to do that, but, instead, provided that when the Corporation Commission refused to issue a license or revoked a license to a fraternal corporation, that such corporation could have such action reviewed "by proper proceedings in any court of competent jurisdiction."

We think that proceeding or "proceedings," as here used, has reference to "a prescribed mode of action for carrying into effect a legal right." The word has many different meanings, depending upon the context in which it is used, but we think its ordinary meaning and the meaning here intended, as gathered from the context, is the form of law or the mode in which a judicial transaction is to be conducted. 32 Cyc. 406.

It is said that "under the code of some states *mandamus* is regarded as a special proceeding." 26 Cyc. 142. Our statute defining *mandamus* and prescribing its procedure in paragraph 1558 of the Civil Code, says:

" . . . If the proceedings be brought in the supreme court the court shall. . . . If brought in the superior court the trial shall be had in the county in which the proceeding is brought."

In *State ex rel. Brown* v. *McQuade,* 36 Wash. 579, 79 Pac. 207, the supreme court of the state of Washington, in discussing a proceeding in *mandamus* and the use of the writ, said:

"Formerly *mandamus* was regarded as a prerogative writ, issued, not as of right, but at the pleasure of the sovereign or state, in his or its name, as an attribute of sovereignty; but with us the writ is not in any sense a prerogative writ, or a writ to be issued at the discretion of the court. It is a procedure under the code, and any person who has a cause that calls for its invocation has the same right to sue out the

writ as he has to commence a civil action to redress a private wrong. As we said in *State ex rel. Race* v. *Cranney*, 30 Wash. 594, 71 Pac. 50, a proceeding in *mandamus* 'is a judicial investigation, the object of which is the determination of civil rights, the same as in ordinary proceeding; not only the determination of rights, but their determination in such a way as to culminate in an effective judgment.' In our practice *mandamus* is nothing more than one of the forms of procedure provided for the enforcement of rights and the redress of wrongs. The procedure has in it all the elements of a civil action. The facts stated in the affidavit for the writ may be controverted by a return, raising both questions of law and fact. The return likewise may be controverted, and a trial had on the issues of fact thus raised, either before the court, a jury, or a referee, as the court may order. Judgment can be entered on the verdict or findings not only directing the issuance of a peremptory mandate, but for damages and costs, on which execution may issue. In other words, the statute has been so framed as to afford complete relief in all cases falling within its scope and purport, whether these be cases of willful violations of recognized rights, or denials, made in good faith, that the rights contended for exist. The right to sue out the writ is not made to depend on the character of the dispute, but on what answer is given to the question: Can the ordinary course of law, afford a plain, speedy, and adequate remedy? If the ordinary course of law will furnish such a remedy, the writ will not issue; otherwise it will. It was to avoid circuity of action, thus doing away with the necessity of resorting to more than one proceeding for the enforcement of a right, that the law was framed. This court has many times recognized the differences between the modern and the ancient writ, and has repeatedly upheld the remedy in cases where formerly it would have been denied.''

We know of no form of action or proceeding, statutory or otherwise, open to appellee and offering relief, unless it be the proceeding by *mandamus*. Our statute provides that a party beneficially interested, there being no plain, speedy and adequate remedy in the ordinary course of law, shall be entitled to a writ of *mandamus* from the supreme court or superior court, as the case may be, "to any inferior tribunal, corporation, board (whether the Governor is a member of

such board or not) or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person.'' Paragraphs 1553 and 1554, Civil Code 1913. It provides for the forming of issues, and, if the answer raises any question of fact essential to the determination of the matter or affecting substantial rights of the party, a jury trial, in the discretion of the court, may be granted.

*Mandamus* has been recognized as a ''proper proceeding'' by the courts of other states upon the application of insurance companies to compel insurance commissioners to issue licenses, and permits to transact business where, by the local law, such commissioners are the designated agencies for such purpose. And, where the insurance company has complied with the requirements of the law in its application, the courts have directed the issuance of a license. *State ex rel.* v. *Fidelity & Casualty Co.*, 49 Ohio St. 440, 34 Am. St. Rep. 573, 16 L. R. A. 611, 31 N. E. 658; *Phoenix Carpet Co.* v. *State*, 118 Ala. 143, 72 Am. St. Rep. 143, 22 South. 627; *Guy L. Wallace & Co.* v. *Ferguson*, 70 Or. 306, 140 Pac. 742, 141 Pac. 542; *People ex rel. U. S. Grand Lodge* v. *Payn*, 161 N. Y. 229, 55 N. E. 849; *State ex rel.* v. *Vorys*, 69 Ohio St. 56, 68 N. E. 580.

We think the form or mode of action adopted in this case by the appellee is within the terms of the statute when it used the phrase ''proper proceedings.''

The statute provides that the commission shall reduce its ruling, order or decision to writing and file the same in the office of the Corporation Commission, and shall furnish a copy thereof, together with a statement of its reasons, to the officers of the society. The court is empowered to review the commission's action as expressed in its order, ruling or decision, together with its reasons. The appellant does not undertake to justify its action by any order, ruling or decision in writing, nor does it assign any reason in its answer for refusing to issue a license, except that it contends the law lodges in it the discretion to grant or refuse a license as

it may choose, and in doing so it is exercising *quasi*-judicial functions.

The appellant relies in part on section 5 of article 15 of the state Constitution as justifying its refusal to issue a license. That section reads as follows:

"The Corporation Commission shall have the sole power to issue certificates of incorporation to companies organizing under the laws of this state, and to issue licenses to foreign corporations to do business in this state, as may be prescribed by law."

We think the meaning of this provision of the Constitution is that the sole and exclusive power to issue certificates and licenses is lodged in the Corporation Commission, but that the legislature may prescribe the kinds of corporations that may do business in this state and their qualifications, and make it the duty of the Corporation Commission to issue to such corporations, upon proper application and showing, licenses and certificates. In other words, the legislature may not authorize any other commission, board, body or person to issue certificates and licenses, that right or power being by the Constitution lodged in the Corporation Commission, but it may prescribe by law the kinds and qualifications of corporations and the rules and regulations for the conduct of their business. And it would seem that, if the legislature has set forth what corporations may enter this state to transact business and the steps to be taken by them to secure that privilege, and it is ascertained, by the method provided, that any such corporation has met the conditions of the law, which seems to be the case here, nothing remains for the Corporation Commission to do but to issue a license or certificate. The power of the legislature to define the kinds of corporations and their qualifications to do business in this state is unlimited, except that it may not lodge the duty of issuing the certificate or license in any other agency than the Corporation Commission. The commission cannot license corporations other than those named by the law-making body, neither can it refuse arbitrarily or capriciously to license those named and possessing the qualifications prescribed by law, and which corporations have complied with all the provisions of the law entitling them to a license. This we say, in view of the language used in the above constitutional provision, and also in para-

graph 3486 of the Civil Code, *supra*. This paragraph says:

"Any society shall be entitled to a license to transact business within this state" upon filing with the commission the papers and statements therein enumerated "and furnishing the Corporation Commission with such other information as the commission may deem necessary to a proper exhibit of its business and plan of working."

"Other information" mentioned which the commission is authorized to demand is information that the commission may require from the corporation applying for license, other than that specifically enumerated and named in the law. In this case no "other information" was asked for or demanded of the appellee. It would seem that for some reason of its own, not in any way exhibited or shown in its order of refusal or answer to the complaint, the appellant Corporation Commission refused to issue the license applied for upon a showing in all respects fulfilling the requirements of the law.

Notwithstanding the provision in the above statute that "any society shall be entitled to a license to transact business in this state" upon qualifying as provided, that absolute right, it may be contended, is qualified by the further statement that "the Corporation Commission *may* issue a license to such society to do business in this state until the first day of the succeeding April." If there is no obligation on the part of the commission to issue a license upon a proper and sufficient application, then the right to one, as given in this section, may be completely nullified by the nonaction or the arbitrary and capricious action of the commission. Their judgment of the qualifications of an applicant to do business will be substituted in that event for the judgment of the legislature. We do not think that the word "may" is used in a permissive or optional sense, but that it has the equivalent meaning of "shall," and that it is the duty of the commission to issue a license when the applicant has in all respects shown itself qualified in the particulars named by the legislature, and in addition thereto given "such other information as the commission may deem necessary to a proper exhibit of its business and plan of working." The commission is an agency of the state created for the purpose of exercising certain functions and performing certain duties for the state, not for the purpose of prohibiting or restricting insurance

business, but for the purpose of regulating it in the manner provided by law. Persons and corporations whose business is that of insurance are vitally interested in the privileges conferred by licenses to do business. They are forbidden to operate in this state without a license; with a license they may carry on the business for which they were organized. In *McLeod* v. *Scott,* 21 Or. 94, 26 Pac. 1061, it is said:

"It is a general principle of statutory construction that, when the word 'may' is used in conferring power upon any officer, court or tribunal, and the public or a third person has an interest in the exercise of the power, then the exercise of the power becomes imperative, and Endl., Interp. St., par. 310, Sedg., St. & Const. Law, 377, and Potter, Dwar. St., p. 220, note 27, are referred to as authority. *Smith* v. *King,* 14 Or. 10, 12 Pac. 8, is to the same effect, and the undoubted weight of authority is the same way. *People* v. *Commissioners* [130 Ill. 482], 22 N. E. 596, 6 L. R. A. 161, and note."

Again it is said: "It is well settled in statutory interpretation that the word 'may' may be read 'shall.'" *Rock Island County Supervisors* v. *United States,* 71 U. S. (4 Wall.) 435, 18 L. Ed. 419.

This rule of interpreting "may" as meaning "shall" in cases like this is so well settled we refrain from citing authorities to any extent. It is possible that cases might arise wherein the commission, passing upon an application for licenses to transact business in this state by a foreign fraternal society or corporation, would be required to exercise discretion or judicial functions, but clearly this is not shown to be a case of that kind. Should such a case arise, it will then be time enough to determine whether the action of the commission may be reviewed and revised by the proceeding in *mandamus.*

We think the act of issuing a license to the appellee authorizing it to do the business of insurance under the facts of this case was specially enjoined as a duty resulting from the office of the Corporation Commission, and the judgment of the lower court should be sustained.

Judgment affirmed.

FRANKLIN and CUNNINGHAM, JJ., concur.