From Lytle F. Perry, Erie, Pa.

---

## Foreign Title Insurance Companies.

*Corporations — Foreign title insurance companies — Doing business in Pennsylvania—Act of May 9, 1889.*

1. A foreign title insurance company, duly registered and maintaining an office and agency in Pennsylvania, may lawfully engage in the business of title insurance within the State, and such company, though it cannot engage in the banking business, is within the supervision of the Banking Department of the State.

2. The powers expressed in the Act of May 9, 1889, P. L. 159, and supplements thereto, apply peculiarly to domestic companies, and do not extend to or enlarge in any way the business which foreign title insurance companies may otherwise lawfully do in this State.

Attorney-General's Department. Opinion to Hon. P. C. Cameron, 2nd Deputy Commissioner of Banking.

PUSEY, Dep. Att'y-Gen., May 24, 1922.—Answering your communication of May 12, 1922, requesting an opinion as to whether or not a foreign title insurance company may lawfully engage in the business of title insurance in Pennsylvania, I beg to advise you as follows:

In the first place, the Commonwealth of Pennsylvania has full power either to exclude a foreign corporation not engaged in interstate commerce altogether, or it may impose any condition it pleases on a foreign corporation seeking to do business within the State.

A corporation is not a "citizen" within the purview of section 2, article IV, of the Constitution of the United States, with respect to the "privileges and immunities" accorded to citizens of other states: Lafayette Ins. Co. *v.* French, 18 How. 404; Orient Ins. Co. *v.* Daggs, 172 U. S. 557; List *v.* Com., 118 Pa. 322; Bank of Augusta *v.* Earle, 13 Peters, 519; Paul *v.* Virginia, 8 Wall. 168; and a long line of similar authorities.

In pursuance of this paramount doctrine of the law, the Commonwealth of Pennsylvania has enacted legislation from time to time permitting foreign corporations to engage in business within the State, and has embodied conditions and regulations with respect thereto.

The Act of Assembly of April 22, 1874, P. L. 108, provided, in section 1 thereof, that: "No foreign corporation shall do any business in this Common-

2 D. & C.

wealth until said corporation shall have established an office or offices and appointed an agent or agents for the transaction of its business therein."

Section 2 of the act provides that: "It shall not be lawful for any such corporation to do any business in this Commonwealth until it shall have filed in the office of the Secretary of the Commonwealth a statement, under the seal of said corporation and signed by the president or secretary thereof, showing the title and object of said corporation, the location of its office or offices, and the name or names of its authorized agent or agents therein; and the certificate of the Secretary of the Commonwealth, under the seal of the Commonwealth, of the filing of such statement, shall be preserved for public inspection, by each of said agents, in each and every of said offices."

The Act of May 8, 1901, P. L. 150, further provides that foreign corporations shall pay a bonus and shall make annual reports to the Auditor General.

The Act of Assembly of March 28, 1808, 4 Sm. Laws, 537, cited in 1 Purdon's, 447, in section 2, provides that: "No company incorporated by the laws of any other of the United States shall be permitted to establish within this Commonwealth any banking-house or office of discount and deposit. . . ."

The Act of June 7, 1907, P. L. 446, requires that all foreign corporations, including "title insurance companies," which shall engage in the business within the Commonwealth of selling bonds, securities, etc., shall first be licensed by the Commissioner of Banking to transact such business in the manner provided by the act of assembly.

While there is, therefore, a prohibition in our law against foreign corporations engaging within the State in the business of banking or mantaining a banking-house or office of discount and deposit, and likewise against the selling of bonds and securities without having first obtained a license from the Commissioner of Banking so to do, there is no such prohibition under the law with respect to conducting the business of title insurance within the limits of the Commonwealth, or pertaining to property within the Commonwealth, provided such foreign corporation is not also conducting a banking business or is engaged in the selling of securities, etc., and has otherwise complied with the law of the Commonwealth with respect to maintaining a local office and agent, and has also complied with the law with respect to the payment of bonus and the furnishing of official reports, etc.

This does not mean, however, that a foreign title insurance company, engaged only in the business of title insurance in Pennsylvania, may enjoy all the rights, powers and privileges of title insurance companies incorporated under the provisions of the law of Pennsylvania. These powers, as expressed in the Act of Assembly of May 9, 1889, P. L. 159, and supplements thereto, apply peculiarly to domestic companies and do not extend to or enlarge in any way the business which foreign title insurance companies may otherwise lawfully do in Pennsylvania.

Nor is it intended that a foreign title insurance company limiting its business within the Commonwealth merely to title insurance may thereby avoid supervision of the State Banking Department.

The Banking Act of May 21, 1919, P. L. 209, provides, in section 4 thereof, that the supervision of the Banking Department shall extend and apply to corporations "incorporated under the laws of this State, or under the laws of any other state, and authorized to tranact business in this State," including "title insurance companies."

Attorney-General Brown, in an opinion under date of May 4, 1915 (Opinions of the Attorney-General, 1915-1916, page 273), interpreting the Banking Department Act of Feb. 11, 1895, P. L. 4, similar in this respect to the later

Foreign Title Insurance Companies.

Banking Department Act of 1919, held that "title insurance companies," as such, without regard to any other powers authorized to be exercised by the Act of May 9, 1889, or otherwise, with respect to banking or trust company powers extended to them, come under the supervision of the Commissioner of Banking.

I am, therefore, of the opinion that a foreign title insurance company lawfully registered and duly maintaining an office and agency in the State of Pennsylvania may lawfully engage in the business of title insurance within the State, and that such company, though it cannot engage in the banking business, comes within the supervision of the Banking Department.

From Guy H. Davies, Harrisburg, Pa.