Argued June 26, reversed July 17, rehearing denied October 2, 1928.

KARL HERBRING *v.* CLARE A. LEE, INSURANCE COMMISSIONER.

(269 Pac. 236.)

For appellant there was a brief over the name of *Mr. I. H. Van Winkle,* Attorney General, with an oral argument by *Mr. Willis S. Moore,* Assistant Attorney General.

For respondent there was a brief and oral arguments by *Mr. Thos. MacMahon* and *Mr. Karl Herbring.*

BEAN, J.—Section 6333, Or. L., provides, except in certain instances therein specified, which are not material to the question herein presented, as follows:

"No company, association, person or persons, authorized to transact insurance or offer indemnity contracts in this state, other than life insurance companies, and not incorporated under the laws of this state, hereinafter designated as company, shall make, write, place or cause to be made, written, or placed, any policy or contract of insurance or indemnity of any kind or character, or a general or floating policy covering risks on property located in the state of Oregon, liability created by or accruing under the laws of such state, or undertakings to be performed in such state, except through their regularly commissioned and licensed resident agents, who shall countersign all policies or indemnity contracts so issued and collect the premiums therefor, to the end that the state may receive the taxes required by law to be paid on premiums collected for insurance on property or undertakings located in this state, and no person shall pay or forward any premiums or applications for insurance or in any manner secure, help or aid in the placing of any insurance, or effect any contract of insurance or indemnity upon property, liability or undertakings located in this state with any such insurer which is not authorized to transact its business in this state; provided: * *

(3) "Every company duly authorized and licensed to transact insurance business, other than life insurance companies, in the state of Oregon, and lawfully doing such business therein, may in respect thereof appoint an agent or agents in each city, town or village in this state, and the name of every agent

appointed in accordance with the provisions of this section, including the classes of business he is authorized to transact for such company, shall be filed with the insurance commissioner immediately upon the making of such appointment by any such company. The insurance commissioner, if he finds the agent qualified, shall thereupon issue to each such agent a license setting forth that such agent is entitled to act for the company appointing him for the balance of the current year ending April 1st, following the date of such appointment; provided, that the license issued to an established agency of any company in any city, town or village in this state may be transferred by the insurance commissioner to another agent or agency upon proper application of any such company, without exacting further fees. Every such license for each such agent representing any such company shall be renewed during the month of March in each year for the ensuing year upon proper application to the insurance commissioner by the company appointing him. The fee fixed for issuing such license shall be $2 and shall be paid to the insurance commissioner.''

Plaintiff, a resident and practicing attorney in the City of Portland, Oregon, made application to the defendant as insurance commissioner for a license to act as agent in that city for the Northwest National Fire Insurance Company, a foreign insurance corporation, which for several years had been qualified and doing insurance business in the State of Oregon. The application of the plaintiff was denied by the insurance commissioner for the reason that the Northwest National Fire Insurance Company is a foreign fire insurance corporation, and that it had already appointed two resident agents to act for it in the City of Portland under its corporate name, and that a third agent for said city to act under its corporate name could

not be appointed except upon the payment of an additional fee of $500 by said insurance company. The refusal was based upon Section 6388, Or. L., which relates to the conditions upon which such companies may write insurance in the State of Oregon.

That section provides that it shall be unlawful for any fire insurance company doing business in the State of Oregon to write, place or cause to be written or placed any policy or contract for indemnity or insurance on property situated or located in the State of Oregon, except through or by the duly authorized agent, or agents, of such insurance company residing and doing business in this state.

Subdivision 2 of said section requires every fire insurance company before issuing any policy or contract for indemnity or insurance on property situated or located in the State of Oregon to file with the insurance commissioner of this state the title under which it proposes to write any such insurance in the State of Oregon, and that such title shall be registered by the insurance commissioner, together with the name of the insurance company filing such title, and a specimen thereof shall be pasted in a book to be kept for that purpose by the insurance commissioner, and that upon paying the fee as thereinafter provided and complying with all other departmental requirements, such insurance company shall be entitled to issue policies or contracts for indemnity or insurance for the one title so registered, and no more.

Subdivision 3 requires every insurance company registering a title under said act to pay to the insurance commissioner a fee of $5 therefor and that the insurance commissioner shall then issue a certificate to the insurance company registering such title.

Subdivision 4 provides that every insurance company licensed to transact fire insurance business in this state may establish agencies to consist of but one agent for every city, town or village in the state to represent the title registered and additional agencies as thereinafter provided in said section, and that the name of every agent appointed in accordance with the provisions of said section shall be filed with the insurance commissioner immediately upon the making of such appointment. It is further provided that the insurance commissioner shall thereupon issue to each such agent who is qualified a certificate setting forth that such agent is entitled to act for the company appointing him for the balance of the current year ending March 31st, after the date of such appointment; that a fee of $2 shall be paid to the insurance commissioner for issuing such certificate.

Subdivision 5 provides that any insurance company authorized to transact fire insurance business in this state in its own corporate name may file one additional title in the same manner as provided for the filing of a corporate title and may issue its policies under such additional title and appoint agencies to transact its business under such additional title.

Subdivision 6 provides that any such insurance company which is authorized to transact fire insurance in this state in its corporate title, and also under an additional title, may only appoint one agent to represent each such title filed in any city, town or village of this state.

Subdivision 7 provides that such company may appoint one additional agent to represent such company transacting business in its own corporate name in any city of this state having a population of 50,000 or

more inhabitants, according to the last federal census, provided any such insurance company doing business under an additional title shall be limited to one agency for each title.

Subdivision 8 provides thus:

"Any such insurance company may appoint an additional agent or agents to transact business in its own corporate name, or additional title, in any city of this state on application to the insurance commissioner and the payment of an annual license fee of five hundred dollars for each such agent."

The Northwest National Fire Insurance Company notified the appellant that it had appointed the respondent to act as its agent in the City of Portland, Oregon, but did not pay the annual license fee of $500 required by the subdivision to be paid upon application of such agent.

It is the contention of the respondent in this case that his application for a license as insurance agent was made pursuant to Section 6333, Or. L., and that since no objection was raised as to his personal qualifications, it became the duty of the insurance commissioner to issue such license to him upon the payment of a fee of $2 therefor, which was tendered by the respondent with his application.

The commissioner's refusal to make the requested appointment was occasioned by the nonpayment of the fee of $500 required by Section 6388, Or. L., as a condition precedent to the right of any fire insurance company to appoint such additional agent. The contention of respondent is, that the license should issue upon compliance with the conditions prescribed by Section 6333, Or. L., without the foreign insurance company complying with Section 6388, Or. L., subdivision 8, by paying the fee of $500 thereby required.

Chapter 203, General Laws of Oregon, 1917, which is practically a fire insurance code, is a general act "for the regulation and supervision of insurance in the state of Oregon." This act contains subdivision 8, Section 6388, Or. L., and also subdivision 3, Section 6333, Or. L.

There is no reason suggested or conceived why a foreign insurance company applying to do business in this state should not comply with both of the sections and subdivisions mentioned. Therefore, a foreign corporation being required to comply with the statute, in order to be entitled to appoint agents and consummate its business in the State of Oregon, it follows, as the night follows the day, that in order for an agent to obtain a license to represent such a foreign corporation there must first be a compliance by the foreign corporation with the requirements of our state law.

■ The power of the state to impose conditions upon which a foreign fire insurance company may be permitted to do business in this state is not subject to constitutional limitations, and the rights of one applying for a license to act as agent for such insurance company are contingent upon the compliance of the company with conditions precedent to its right to appoint such an agent: Section 6388, Or. L., § 22c, Chap. 203; Gen. Laws Or. 1917; *Paul* v. *Virginia,* 8 Wall. 168 (19 L. Ed. 357); *Fire Assn. of Phila.* v. *New York,* 119 U. S. 110 (30 L. Ed. 342); *Hooper* v. *State of California,* 155 U. S. 648 (39 L. Ed. 297); *Cheney Bros. Co.* v. *Massachusetts,* 246 U. S. 147 (62 L. Ed. 632, 38 Sup. Ct. Rep. 295); *American Smelting etc. Co.* v. *Colorado,* 204 U. S. 103 (51 L. Ed. 393, 27 Sup. Ct. Rep. 198, 9 Ann. Cas. 978, and cases in note thereto).

■■ While the general power of a state to exclude, restrict or regulate foreign corporations seeking to do business within its borders is undoubted, the exercise of such power by particular statutes is subject to all applicatory constitutional provisions contained in either the state or the federal Constitution. With the question of the expediency or policy of the statutes imposing conditions upon foreign corporations, the courts have nothing to do. It is purely a legislative question. The statute must stand, unless it is plainly in conflict with some constitutional provision; and, if there is doubt as to its constitutionality, the doubt must be resolved in favor of the legislature: 14a C. J., p. 1248, § 3949.

There is no prohibition in the federal Constitution which operates to restrain the legislature of a state from exacting from foreign corporations as a condition precedent to their being admitted to do business within the state, license fees or taxes, even where they are not imposed upon similar domestic corporations: 14a C. J., p. 1256, § 3958. There is no discrimination in the statute as compared with domestic corporations.

■ Having given a foreign corporation a license to do business within the state, the state may revoke it in its discretion for good cause or without any cause at all and its motive in doing so is not open to inquiry, subject of course to the constitutional requirements with respect to the obligation of contracts, vested rights and due process of law. With like limitations, additional requirements, conditions and restrictions may be imposed on foreign corporations already licensed to do business within the state: 14a C. J., p. 1247, § 3948.

A note to *State ex rel.* v. *Ackerman* [51 Ohio St. 163 (37 N. E. 828)], 24 L. R. A. 298, reads thus:

"That insurance is not commerce within the constitutional provisions giving congress authority to regulate commerce and preventing state interference therewith has been fully established by the decisions of the United States Supreme Court, the final authority on the subject, as well as by decisions of the state courts. *Paul* v. *Virginia,* 75 U. S. (8 Wall.) 168 (19 L. Ed. 357); *Ducat* v. *Chicago,* 77 U. S. (8 Wall.) 410 (19 L. Ed. 972); *Liverpool & L. Life & Fire Ins. Co.* v. *Oliver,* 77 U. S. (10 Wall.) 566 (19 L. Ed. 1029); *Home Ins. Co. of N. Y.* v. *Augusta,* 93 U. S. 116 (23 L. Ed. 825); *People* v. *Thurber,* 13 Ill. 554; *Farmers & M. Ins. Co.* v. *Harrah,* 47 Ind. 236; *List* v. *Commonwealth,* 118 Pa. 322 [12 Atl. 277]; *State* v. *Phipps,* 50 Kan. 609 [31 Pac. 1097, 34 Am. St. Rep. 152, 18 L. R. A. 657].

"Therefore to insurance companies the general doctrine fully applies, that a state may exclude a foreign corporation, or impose upon it, as a condition of doing business, any burdens or restrictions that it chooses, reasonable or unreasonable."

■■ A corporation seeking, by its agents, to establish a domicile for business in a state other than that of its creation must take that domicile, as individuals are always understood to do, subject to the responsibilities and burdens imposed by the laws which it finds in force there: *S. S. White Dental Mfg. Co.* v. *Commonwealth,* 212 Mass. 35 (98 N. E. 1056, Ann. Cas. 1913C, 805, 808). Making the right to act as agent for foreign insurance company subject to the condition of the payment of a fee, or a restriction, tending to limit the number of agents to act for a foreign insurance company in this state, is not an unconstitutional impairment of the privileges and immunities of a citizen, since corporations are not within the protection of the provisions relating thereto, and persons seeking to act for them can acquire no greater

rights than the corporations have. The power to exclude embraces the power to regulate, to enact and enforce all legislation in regard to things done within the state which may be directly or incidentally requisite in order to render the enforcement of the conceded power efficacious to the fullest extent subject always, of course, to the paramount authority of the Constitution of the United States: *Cook* v. *Howland*, 74 Vt. 393 (52 Atl. 973, 93 Am. St. Rep. 912, 59 L. R. A. 338).

■ The insurance business so directly affects the well-being and interest of the public as to make it a proper subject for regulation and control by the state. The right to regulate and control the business includes the right to regulate and control the agents and brokers through whom such business is carried on. The state has the right to require all persons who engage within its borders in the business of insurance first to secure a license from designated authority, authorizing the engaging in such business: *Wallace* v. *Ferguson*, 70 Or. 306, 312 (140 Pac. 742, 141 Pac. 542); *La Tourette* v. *McMaster*, 248 U. S. 465 (63 L. Ed. 362, 38 Sup. Ct. Rep. 160); *Noble* v. *English*, 183 Iowa, 893 (167 N. W. 629); note to *N. W. Nat. Ins. Co.* v. *Fishback* [130 Wash. 490 (228 Pac. 516)], 36 A. L. R., at pages 1507, 1512, and other cases there cited.

In *La Tourette* v. *McMaster*, 248 U. S. 465 (63 L. Ed. 362, 39 Sup. Ct. Rep. 160), a statute was held to be constitutional which provided that only such persons shall be licensed to act as insurance agents or brokers as are residents of the state and have been licensed agents of the state for at least two years. The court said that the business of insurance was clothed with a public interest, and subject, therefore,

to the regulating power of the state, "and it necessarily follows that, as insurance is affected with a public interest, those engaged in it or who bring about its consummation are affected with the same interest and subject to regulation as it is. A broker, so engaged—is an instrument of such consummation. The statute makes him the representative of the insured. He is also the representative of the insurer— * * and his fidelity to both may be the concern of the state to secure."

It must be conceded that a state has the power to prohibit a foreign corporation from doing business in the State of Oregon. This includes the lesser power to regulate and impose a restriction upon such foreign corporation as a condition precedent to its doing business or to enlarge or extend its business in this state.

■ The attack is made by respondent upon the validity of subdivision 8, Section 6388, Or. L., as in violation of Section 2, Article I of the Constitution of Oregon, which provides that no law shall be passed granting to any citizen or class of citizens, privileges or immunities which upon the same terms shall not equally belong to all citizens. It is also claimed that the provision is repugnant to the Fourteenth Amendment of the Constitution of the United States, which provides that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, or deny to any person within its jurisdiction the equal protection of the laws.

The provisions of the statute do not abridge any right, guaranteed by the state or federal Constitutions: *Ferguson* v. *Tuttle,* 95 N. J. Law, 374 (112 Atl. 596). The latter case is in principle like the one in hand.

■ It is also said that the law is discriminatory, oppressive and arbitrary. The qualification prescribed by the statute is neither discriminatory, oppressive nor arbitrary between persons. It is a plain, simple prerequisite under which a foreign insurance company can do business in the State of Oregon. The legislature in its wisdom had the power to prescribe the conditions under which agents can do business in the state for foreign insurance companies. All are alike under the law. There is no discrimination.

It may as well be said that the state should permit a foreign corporation to do business within its borders, without any compliance with the statute in order that citizens of the state might act as agents for such foreign corporations, as it is to say foreign corporations should not comply with subdivision 8, section 6388, in order that a license might be issued to an agent to represent such foreign insurance company. The regulation of the appointment of agents of such corporations is merely incidental to the provisions for the qualifications of foreign insurance companies to do business in this state.

In the case of *N. W. Nat. Life Ins. Co.* v. *Fishback,* 130 Wash. 490 (228 Pac. 516, 36 A. L. R. 1507), the opinion of the majority of the Supreme Court of Washington was directed solely to the effect of the statute in depriving persons who desire to act as agents from following such occupation. This case was followed in *Franklin F. Ins. Co.* v. *Montoya* (N. M.), 251 Pac. 390, where it was held that a statute prohibiting more than one agent of fire insurance companies in each town violates the due process and special privilege clauses.

There is some reason for the requirement for the restriction contained in the statute limiting or tending to limit the number of agents of foreign insurance corporations as a matter of regulation and supervision. While no specific requirements are contained in the law as to such agents keeping a record, it is well known that a record of the issuance of fire insurance policies are kept by such agents. And a less number of agents would doubtless require less effort of supervision and would facilitate the supervision of insurance business to a certain extent as the commissioner could verify reports made by foreign insurance companies for the basis of taxation by an examination of the books and records of agents.

The main purpose of the provision of the statute appears to be in the nature of a restriction on a foreign insurance corporation. It is purely a legislative question: 14a C. J., p. 1248, § 3949.

We hold that the statute involved is a valid legislative requirement of a foreign insurance company in the conduct of its business in the State of Oregon. The judgment of the Circuit Court is reversed and the proceeding is dismissed.

REVERSED AND PROCEEDING DISMISSED. REHEARING DENIED.

RAND, C. J., and BROWN and BELT, JJ., concur.